UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| SHERONE F.,[1] Plaintiff, vs. FRANK BISIGNANO, Commissioner of Social Security Administration, Defendant. | ) ) ) ) ) ) ) ) ) ) ) | Case No. 4:25-CV-862-ACL |

**MEMORANDUM**

Plaintiff Sharone F. brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of his applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Act.

An Administrative Law Judge ("ALJ") found that Plaintiff was not disabled because he was capable of performing work existing in significant numbers in the national economy. This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be affirmed.

[1]On May 1, 2023, the Committee on Court Administration and Case Management of the Judicial Conference of the United States issued a memorandum recommending that courts adopt a local practice of using only the first name and last initial of any non-government party in Social Security opinions.

## I. Procedural History

Plaintiff filed his applications for benefits on February 2, 2023. (Tr. 192-99.) He claimed he became unable to work on January 7, 2023, due to colon surgery, memory loss, ileostomy bag, and other complications of diverticulitis. (Tr. 217.) Plaintiff was 44 years of age on his alleged onset of disability date. *Id.* His applications were denied initially and on reconsideration. (Tr. 121-26.) On April 17, 2024, after a hearing, an ALJ found that Plaintiff was not disabled. (Tr. 13-25.) The Appeals Council denied Plaintiff's claim for review. (Tr. 1-5.) Thus, this decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, Plaintiff first argues that the ALJ "failed to develop the record fully and fairly." (Doc. 16 at 4-11.) Plaintiff next argues that the ALJ "failed to properly evaluate credibility." *Id.* at 11-14.

## II. The ALJ's Determination

The ALJ first found that Plaintiff meets the insured status requirements of the Social Security Act through September 30, 2025. (Tr. 15.) He found that Plaintiff has not engaged in substantial gainful activity since January 7, 2023, the alleged onset date. *Id.* Next, the ALJ concluded that Plaintiff had the following severe impairments: diverticulitis with a history of laparotomy and colostomy; Wernicke-Korsakoff Syndrome;[2] osteoarthritis of the hips; and

[2] Wernicke-Korsakoff syndrome is a brain disorder caused by lack of thiamine (vitamin B1) that may result in lasting brain damage. [It] is sometimes diagnosed as two separate conditions: Wernicke's encephalopathy and Korsakoff syndrome. Generally, though, they [are] considered to be different stages of the same disorder, both caused by too little thiamine in a person's body. [I]n advanced cases, even with treatment, the disorder's effect on memory and other thinking skills can be permanent. Neill Graff-Radford, M.D., Neurology, Mayo Clinic, *Prompt*

neurocognitive disorder. *Id.* The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 16.)

As to Plaintiff's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the occasional climbing of ramps and stairs; never climbing ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling; must avoid concentrated exposure to extreme cold, extreme heat, and vibration; must avoid all exposure to hazards such as moving machinery and unprotected heights; can perform only simple, routine, and repetitive tasks, requiring only simple work-related decisions, with few changes in work setting and not at a production-rate pace, but rather production should be measured per shift; can maintain the concentration required to perform simple tasks, remember simple work-like procedures; and make simple work-related decisions; and can stay on task and thereby meet production requirements.

(Tr. 18.)

The ALJ found that Plaintiff was unable to perform any past relevant work but could perform work existing in significant numbers in the national economy, such as hand packer, production worker, and inspector/tester/sorter. (Tr. 23-24.) He concluded that Plaintiff was, therefore, not under a disability from his alleged onset date through the date of the decision. (Tr. 24.)

---

*Diagnosis and Treatment May Eliminate Symptoms of Brain Disorder*, Mayo Clinic News Network (April 30, 2010), https://newsnetwork.mayoclinic.org/discussion/prompt-diagnosis-and-treatment-may-eliminate-symptoms-of-brain-disorder/#:~:text=Answer% 3A,eventually% 20can% 20be% 20life% 2Dthreatening.

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability insurance benefits protectively filed on February 2, 2023, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.
>
> Based on the application for supplemental security income filed on February 2, 2023, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

(Tr. 25.)

## III. Applicable Law

### III.A. Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted); s*ee also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003). Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted).

**III.B. Determination of Disability**

A disability is defined as the inability to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any kind of substantial gainful work which exists … in significant numbers in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, reaching out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-

workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other

evidence listed in the regulations. *See id*. If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n. 5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a. The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists. *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). The Commissioner must then rate the degree of functional loss resulting from the impairments. *See* 20 C.F.R. §§ 404.1520a(b)(3),

416.920a(b)(3). Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities. *See id.* Next, the Commissioner must determine the severity of the impairment based on those ratings. *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c). If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder. *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders. *See id.* If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

## IV. Discussion

As noted above, Plaintiff challenges the ALJ's development of the record and RFC determination as to his mental impairments; and the ALJ's evaluation of Plaintiff's credibility and RFC regarding his physical impairments. The undersigned will discuss Plaintiff's claims in turn.

### A. Mental Impairments

Plaintiff first argues that the ALJ failed to satisfy his duty to develop the record fully and fairly with regard to Plaintiff's mental symptoms. Specifically, he argues that the ALJ did not "obtain medical evidence that addresses [Plaintiff's] ability to function in the workplace and that supports the ALJ's RFC assessment." (Doc. 16 at 4.) He contends that, instead of "obtaining a medical opinion to rate [Plaintiff's] functional impairments in 'level of limits', the ALJ impermissibly drew, 'his own inferences about plaintiff' functional ability from medical

reports." (Doc. 16 at 6) (quoting *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017).

Social security disability proceedings are non-adversarial, and the ALJ is responsible for developing the record fairly and fully. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007). Therefore, the ALJ cannot render an opinion if a "crucial issue [is] undeveloped," but the ALJ has no duty to seek clarification of medical opinions if the record contains other detailed clinical evidence of the claimant's limitations. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

By way of background, Plaintiff's alleged onset date and application filing date coincide with a prolonged hospitalization for colon issues. He was hospitalized from January 6 to February 21, 2023, for diverticulitis with an abscess of the sigmoid colon, and underwent surgical treatment, including a partial colectomy and colostomy.[3] (Tr. 19, 293-94.) On July 25, 2023, Plaintiff reported memory issues to primary care physician Chaitasi Yogesh Naik, D.O. (Tr. 19, 1860.) Plaintiff's sister indicated that Plaintiff had "continued memory issues and he did not seem like himself, which she said was worse at bedtime." *Id.* Dr. Naik referred Plaintiff to John Wright, Ph.D., ABPP, Board Certified in Clinical Neuropsychology, for a neuropsychological evaluation "in the context of concerns about abnormal cognitive decline." (Tr. 1860.)

Plaintiff's claim is largely based on the ALJ's evaluation of opinions from Dr. Wright's September 22, 2023 examination. At that time, Plaintiff reported that he has been very forgetful, and it takes him longer to figure things out since his surgery. (Tr. 1861.) He indicated that sometimes he is incorrect when he tries to solve a problem. *Id.* Upon questioning by Dr. Wright, Plaintiff stated that his focused attention and concentration varied on the day, and there are times when he is "all over the place." *Id.* Plaintiff did not feel able to

[3] The colostomy was subsequently reversed. (Tr. 1920.)

divide his attention very well or to multitask as well as he did in the past, and his sister agreed with this. *Id.* He also reported some word-finding difficulties. *Id.* Plaintiff reported difficulty managing complex tasks of daily living, and he depended on his sister to assist him. *Id.* He had been living with his sister since his initial surgery, and she reminds him to pay his bills. *Id.* Plaintiff felt he could manage his mediations relatively well, but sometimes he forgets. *Id.*

Dr. Wright's "summary/impression" is as follows:

> Relative to demographic norms and premorbid estimates, the patient produced a significantly abnormal neuropsychological profile, characterized by primary deficits in anterograde learning and memory (worse for verbal material) and secondary inefficiencies in speeded complex / divided attention. He also appears to have a disorder of diminished drive. Relative strengths were noted in focused attention, language, visual processing, non-speeded problem solving, and visual memory recall.
>
> Etiology is not certain, though it is suspected that these cognitive impairments are due to severe dietary deficiencies from when he had colon issues, which included significant weight loss and severe malnutrition. His current cognitive problems are consistent with the Korsakoff phase of Wernicke-Korsakoff syndrome, likely due to his colon problems. The pattern of these cognitive findings is consistent with cerebral dysfunction of bilateral mesial temporal lobe systems and/or diencephalic regions, as well as frontal lobe systems and perhaps left anterolateral temporal lobe systems, though these later areas also could reflect dysfunction of diencephalic regions. Of note, he has emotional distress, but this does not fully account for these cognitive data.

(Tr. 1864.)

The ALJ conducted a thorough summary of Dr. Wright's report, spending several pages of his opinion setting out Dr. Wright's findings. (Tr. 19-22.) Although the state agency medical consultants determined that Plaintiff did not have a severe mental impairment, the ALJ found that the record supports "moderate limitations in mental functioning due to issues with concentration, focus, and memory." (Tr. 22.)

Claims filed after March 27, 2017, like Plaintiff's, require the ALJ to evaluate medical opinions pursuant to 20 C.F.R. § 404.1520c. This provision states the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources." 20 C.F.R. § 404.1520c(a). Rather, an ALJ is to evaluate the persuasiveness of any opinion or prior administrative medical finding by considering the: (1) supportability of the opinion with relevant objective medical evidence and supporting explanations; (2) consistency with the evidence from other medical sources and nonmedical sources in the claim; (3) relationship with the plaintiff, including length, purpose, and extent of treatment relationship, whether it is an examining source, and frequency of examination; (4) specialization; and (5) other relevant factors. 20 C.F.R. § 404.1520c(c). Supportability and consistency are the most important factors; therefore, an ALJ must explain how he or she considered these factors in the decision. 20 C.F.R. § 404.1520c(b)(2).

The ALJ discussed the following findings of Dr. Wright listed as "Comments" at the end of his report:

> Given these cognitive problems, [Plaintiff] requires oversight when managing all complex/instrumental tasks of daily living, with assistance given as indicated. He will benefit from routine, keeping things simple, accommodations, and compensatory strategies.
>
> ***
>
> It also is recommended that he consult with a trusted and capable adult when confronted with complex decisions, to assure he is remembering all important components when making a decision.
>
> ***
>
> At present, the patient will have functional impairments when trying to do any tasks that require new learning and/or require a speeded response. His ability to learn a new job will be impaired at the present time. As such, he may benefit from contacting Vocational Rehabilitation services to address ways of accommodating for these deficits. If his cognitive deficits persist, he may be appropriate for SSDI benefits.

(Tr. 22, 1864.)

The ALJ stated that he found these opinions “somewhat persuasive.” (Tr. 22.) He explained that Dr. Wright’s findings from the assessment were “somewhat consistent with his limits,” but they do not “appear to support more than moderate limits in mental functioning. *Id.* For example, the ALJ noted that during the September 22, 2023 examination, Plaintiff was found to be alert, attentive, an oriented to personal and place information; but was not oriented to temporal information, “indicating it was Monday, September 9th, 2023.” (Tr. 22, 1862.) The ALJ pointed out that there was “no evidence of excessive distractibility,” and basic conversation was “tracked relatively well,” though he had “some difficulties managing more complex, multistep questions.” *Id.* Plaintiff was well groomed, his speech was fluent, he was well-articulated, and spontaneous. *Id.* There was “no evidence for paraphasic errors or significant word-finding difficulties.” *Id.* Plaintiff’s vocabulary and grammar skills were “suggestive of intellectual functioning in the broad range of average.” *Id.* The ALJ stated that the remainder of the record does not offer consistency, because Plaintiff received no behavioral health treatment and in February of 2024, he completed tasks with minimal assistance. (Tr. 23, 1919.) Finally, the ALJ noted that Dr. Wright’s opinion itself was “vague in terms of saying he has functional impairments when learning new tasks or tasks requiring a speedy response,” and that he has an “impaired ability to learn a new job.” (Tr. 23, 1864.) He remarked that it was “unclear how ‘functional impairments’ and ‘impaired ability’ rate in terms of level of limits.” (Tr. 23.)

***Duty to Develop the Record***

Plaintiff argues that, because the ALJ acknowledged that Dr. Wright’s opinion was vague in terms of rating Plaintiff’s functional impairments, he was required to obtain a medical opinion to rate Plaintiff’s functional impairments. Plaintiff contends that the ALJ instead impermissibly

drew his own inferences about Plaintiff's functional ability from medical reports.

Plaintiff's argument that the ALJ was required to obtain a "functional" medical opinion has been directly foreclosed by a recent majority opinion from the Eighth Circuit in *Bonham v. Bisignano*, 177 F.4th 934, 945 (8th Cir. 2026). In *Bonham*, the plaintiff argued that, by basing her decision on "non-functional medical reports and clinical findings that did not assess his functional ability," "the ALJ relied on impermissible inferences about Bonham's ability to work and therefore violated her duty to develop the record and render an RFC determination that is supported by substantial evidence." *Id.* at 940.

The Court stated that neither *Noerper v. Saul*, 964 F.3d 738, 747 (8th Cir. 2020), nor *Laurer v. Apfel*, 245 F.3d 700 (8th Cir. 2001), supported Bonham's argument. *Id.* at 942. In *Noerper*, a divided panel reversed the district court and remanded the Commissioner's denial of benefits for further factual development after it concluded the record provided "simply no reliable evidence" supporting the ALJ's RFC determination. *Id.* (quoting *Noerper,* 964 F.3d at 746). The *Noerper* Court dealt with "the complete lack of supporting evidence, rather than the lack of a specific *type* of evidence." *Id.* (emphasis added). The panel majority "expressly disclaimed that it was creating a categorical rule: "[W]e do not suggest that an ALJ must in all instances obtain from medical professionals a functional description that wholly connects the dots between the severity of pain and the precise limits on a claimant's functionality. Something, however, is needed." *Id.* The *Bonham* Court noted that earlier cases make clear that the "'something' may be based on reliable objective medical data such as clinical examinations and diagnostic imaging and need not include a medical professional's opinion regarding the claimant's functionality." 177 F.4th at 942. Similarly, in *Lauer*, another split panel decision, the Court reversed "not because of the absence of functional evidence, but

because the panel majority 'located no medical evidence' at all to support the ALJ's RFC determination that the claimant's mental impairments limited only the degree to which he could interact with the public." 177 F.4th at 942 (quoting *Lauer*, 245 F.3d at 704). The Court summarized:

> Properly understood, *Noerper* and *Lauer* reiterate our *actual* "long-held" position that an RFC must be based on some reliable medical evidence about the claimant's ability to function in the workplace, not that the evidence must be functional in-and-of-itself. Read in conjunction, these fact-intensive precedents establish no categorical rule regarding functional evidence.

*Id.* at 942 (emphasis in original). The Court stated that the ALJ based her decision "on ample medical evidence about Bonham's ability to function in the workplace," such as Bonham's scans, physical exams, and tests. *Id.* at 944. As such, this "was not a determination lacking 'some medical evidence of the claimant's ability to function in the workplace.'" *Id.* (quoting *Cox*, 495 F.3d at 619).

Here, like in *Bonham*, the ALJ's determination did not lack medical evidence of Plaintiff's mental ability to function in the workplace. This case is unique in that Plaintiff's mental symptoms arose during his treatment for colon problems in January and February of 2023, and prior to this hospitalization, Plaintiff received no mental health treatment and reported no mental or cognitive symptoms. Dr. Wright performed the September 22, 2023 neuropsychological evaluation at the request of Plaintiff's primary care provider Dr. Naik due to Plaintiff's complaints of continued memory issues at a July 25, 2023 visit for his physical complaints. As part of his evaluation, Dr. Wright reviewed Plaintiff's medical records, interviewed Plaintiff, interviewed Plaintiff's sister, examined Plaintiff, and conducted neurological testing. (Tr. 1860.) Dr. Wright's opinion constituted sufficient medical evidence from which the ALJ could determine Plaintiff's mental RFC.

***Evaluation of Dr. Wright's Opinion***

The ALJ properly evaluated Dr. Wright's opinion by addressing its supportability and consistency. As to supportability, the ALJ found that Dr. Wright's findings on examination were "somewhat consistent" with Dr. Wright's opinions that Plaintiff had functional impairments when learning new tasks or tasks requiring a speedy response, and in learning a new job. The ALJ explained that Dr. Wright's findings on examination support moderate limitations in mental functioning. He cited the following findings of Dr. Wright to support this determination: Plaintiff was alert, attentive, and oriented to personal and place information; but was not oriented to temporal information; there was no evidence of excessive distractibility, and basic conversation was tracked relatively well, although he had some difficulties managing more complex, multistep questions; Plaintiff was well groomed, his speech was fluent, he was well-articulated, and spontaneous; there was no evidence of significant word-finding difficulties; and Plaintiff's vocabulary and grammar skills were suggestive of average intellectual functioning. (Tr. 22, 1862.)

With regard to consistency, the ALJ stated that the remainder of the record "does not offer consisten[cy] since he had no behavioral health treatment and in February 2024, he completed tasks with minimal assistance." (Tr. 23, 1919.)

Plaintiff argues that the ALJ erred in citing the February 2024 speech therapy records of Michele Drake, MS, CCC-SLP, documenting improvement, but not discussing Ms. Drake's records from January 2024. Plaintiff notes that Ms. Drake conducted testing in January 2024, which revealed significant memory deficits. (Tr. 1870, 1894.) Specifically, on January 29, 2024, Ms. Drake's assessment was "moderate/severe deficits in memory, problem solving, attention to detail." (Tr. 1894.) Ms. Drake indicated that Plaintiff would benefit from

continued therapy for instruction and practice in cognitive linguistic areas "to reach [the] highest level of independence with" activities of daily living. *Id.* At his February 2024 visit, Ms. Drake noted improvement and stated that, once Plaintiff understood a task, he completed the task with minimal to no assistance. (Tr. 1919.)

Although the ALJ did not specifically discuss Ms. Drake's January 2024 notes, Ms. Drake's findings of impaired memory and problem solving appear consistent with those of Dr. Wright. The ALJ conducted an exhaustive review and analysis of Dr. Wright's findings. Dr. Wright, a specialist in clinical neuropsychology, provided a comprehensive report setting out Plaintiff's cognitive deficiencies. The ALJ incorporated Dr. Wright's findings in his mental RFC determination. Thus, Plaintiff was not prejudiced by the ALJ's failure to discuss Ms. Drake's January 2024 treatment notes.

***Mental RFC Determination***

The ALJ concluded that Plaintiff had the following mental RFC:

> can perform only simple, routine, and repetitive tasks, requiring only simple work-related decisions, with few changes in work setting and not at a production-rate pace, but rather production should be measured per shift; can maintain the concentration required to perform simple tasks, remember simple work-like procedures; and make simple work-related decisions; and can stay on task and thereby meet production requirements.

(Tr. 18.)

"A disability claimant has the burden to establish her RFC." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004) (citing *Masterson v. Barnhart,* 363 F.3d 731, 737 (8th Cir. 2004)); *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (same); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five.") (citing *Harris v. Barnhart,* 356 F.3d 926, 931, n.2 (8th Cir. 2004); *see also Bowen v.*

*Yuckert,* 482 U.S. 137, 146, n.5 (1987) (noting that the claimant is in a better position to provide information about his own medical condition)).

The Court bears in mind that it is not its "role to reweigh the medical evidence of plaintiff's limitations considered by the ALJ in [the] determination of plaintiff's RFC." *Dotson v. Saul*, No. 4:20 CV 310 RWS, 2021 WL 2529786, at *5 (E.D. Mo. June 21, 2021) (citing *Hensley*, 829 F.3d at 934). Rather, it is the ALJ's duty to weigh conflicting evidence and to resolve disagreements among medical opinions. *Cline v. Colvin*, 771 F.3d 1098, 1103 (8th Cir. 2014).

"The Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his] limitations." *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) (quotation omitted). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace. However, there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley*, 829 F.3d at 932 (cleaned up); *Bonham*, 177 F.4th at 941. The RFC must only include those impairments that are substantially supported by the record as a whole. *Goose v. Apfel,* 238 F.3d 981, 985 (8th Cir. 2001); *see also Forte v. Barnhart,* 377 F.3d 892, 897 (8th Cir. 2004).

Here, the ALJ summarized the medical evidence, including Dr. Wright's comprehensive report, and "concluded, after a thorough and systematic review of these medical records and other evidence in the administrative record, that [the claimant] was not disabled." *Bonham* at 934, 943-44. The ALJ included significant mental limitations to account for Plaintiff's cognitive impairments. Specifically, the ALJ limited Plaintiff to only simple, routine, and

repetitive work, requiring only simple decisions, with few changes, due to his documented problems with learning and memory. He further limited Plaintiff to no production-rate pace to accommodate his documented deficits in speeded problem solving.

The Court finds that the objective medical evidence on which the ALJ relied supported the RFC the ALJ adopted, and "[t]he weighing of evidence 'is ultimately...reserved to the [ALJ].'" *Bonham*, 177 F.4th at 945 (quoting *Cox*, 495 F.3d at 619). Contrary to Plaintiff's contention, the ALJ did not simply rely on his own inferences. *Bonham*, 177 F.4th at 945.

Thus, the Court finds that the mental RFC was based upon substantial evidence and affirms the decision of the Commissioner.

**B. Physical Impairments**

Plaintiff next argues that the ALJ failed to properly evaluate Plaintiff's "credibility" when determining his physical RFC. Plaintiff contends that the ALJ did not sufficiently consider his alleged pain and limitations in sitting and standing when determining his RFC.

"An ALJ may decline to credit a claimant's subjective complaints 'if the evidence as a whole is inconsistent with the claimant's testimony.'" *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016) (citation omitted).[4] "Credibility determinations are the province of the ALJ, and as

---

[4] This was once referred to as a "credibility determination," but the agency has now eliminated use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of an individual's character. Because the analysis remains largely the same, the Court's use of the term credibility refers to the ALJ's evaluation of whether a claimant's "statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and the other evidence of record." *See* SSR 16-3p, 2017 WL 5180304, at *8 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3); *Lawrence v. Saul*, 970 F.3d 989, 995 n.6 (8th Cir. 2020) (noting that SSR 16-3p "largely changes terminology rather than the substantive analysis to be applied" when evaluating a claimant's subjective complaints).

long as 'good reasons and substantial evidence' support the ALJ's evaluation of credibility, [courts] will defer to [the ALJ's] decision." *Id.* (citation omitted).

"When evaluating the claimant's subjective complaints, the ALJ must consider all of the evidence, including objective medical evidence, the claimant's work history, and evidence relating to the *Polaski* factors[.]" *Id.* (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). And the *Polaski* factors include "(i) the claimant's daily activities; (ii) the duration, frequency, and intensity of the claimant's pain; (iii) precipitating and aggravating factors; (iv) the dosage, effectiveness, and side effects of medication; and (v) the claimant's functional restrictions." *Id.* (first citing *Polaski*, 739 F.2d at 1322 and then citing 20 C.F.R. § 416.929(c)).

But while the ALJ must take "[t]hese considerations...into account," courts "have not required the ALJ's decision to include a discussion of how every *Polaski* 'factor' relates to the claimant's credibility." *Samons v. Astrue*, 497 F.3d 813, 820 (8th Cir. 2007). Instead, the ALJ must only recognize and consider *Polaski*'s "analytical framework." *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004); *see Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000) (finding that though the ALJ had not explicitly articulated his credibility determination, [he] did so implicitly by evaluating the claimant's testimony under the *Polaski* factors and by identifying inconsistencies between the claimant's statements and the evidence in the record).

Here, the ALJ found Plaintiff's diverticulitis with a history of laparotomy and colostomy; Wernicke-Korsakoff Syndrome; osteoarthritis of the hips, and neurocognitive disorder were severe impairments. (Tr. 15.) He acknowledged Plaintiff's allegations in his function report of constant pain in the back, hips, and legs; that his legs give out if he stands or walks for long periods; and that he is limited in standing and walking long distances. (Tr. 18, 233-34.) The

ALJ noted that Plaintiff brought a cane to the hearing that he uses for balance, although Plaintiff testified that he did not know if the cane was prescribed. (Tr. 18, 53.)

The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but his statements concerning the intensity, persistence, and limiting effects of his symptoms "are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 18-19.)

The ALJ summarized the objective medical evidence. He stated that Plaintiff underwent a CT scan of the pelvis on July 20, 2023, which revealed "advanced bilateral hip arthritis." (Tr. 1739.) The ALJ next noted that Plaintiff reported low back pain at his July 25, 2023 visit with primary care physician Dr. Naik. (Tr. 19, 1860.) Dr. Naik diagnosed Plaintiff with chronic bilateral low back pain with bilateral sciatica, and bilateral leg weakness. *Id.* Plaintiff saw a nurse practitioner on January 3, 2024, with complaints of back pain and bilateral leg pain since his hospitalization. (Tr. 21, 1876.) He reported he is only able to walk short distances and then needs to stop due to pain and weakness. *Id.* He used a cane "at times for extra support." *Id.* An x-ray of the lumbar spine was normal. (Tr. 21, 1872.) Plaintiff reported feeling unsteady and having fallen on 2 to 3 occasions to his speech therapist on January 15, 2024. (Tr. 21, 1867.) At a physical therapy appointment on January 29, 2024, Plaintiff reported "difficulty with activities such as prolonged walking or going to stand up." (Tr. 21, 1889.) He indicated that he often had to use his hands to assist him with standing and feels as though his legs just give out. *Id.* On examination, Plaintiff had limited range of motion and weakness of the hips and poor balance. (Tr. 21, 1892.) The therapist noted Plaintiff had difficulty with functional activities such as prolonged walking and sit to stands, and that he would benefit from continued physical therapy services to improve his overall mobility and function. *Id.*

The ALJ summarized that Plaintiff has ongoing lower extremity weakness and pain. (Tr. 22.) Although he uses a cane for balance, he noted that the record shows no prescription for the cane. *Id.* The ALJ nevertheless limited him "to standing and walking for only 2 hours per workday, along with occasional postural limits and avoiding hazards." *Id.* He further limited Plaintiff's lifting and carrying to 10 pounds occasionally, due to his ongoing back, hip, and leg pain. *Id.* He stated that, overall, the "signs and symptoms throughout the record are consistent with his reduced sedentary residual functional capacity." *Id.*

Plaintiff argues that the ALJ erred in failing to acknowledge Plaintiff's allegations of difficulty sitting and the need to move around when assessing his credibility and formulating his RFC. At the hearing, Plaintiff testified that the pain in his back and hips interferes with his ability to stand, walk long distances, and "even sitting a certain way." (Tr. 51.) When asked to explain his sitting difficulties, Plaintiff stated, "just like sitting down for long periods of time," and that he "[d]efinitely can't cross the legs." (Tr. 52.) Plaintiff testified that he could sit in an office style chair for about an hour before he would have to get up. *Id.*

The ALJ did not specifically discuss this testimony. The ALJ, however, incorporated significant limitations due to Plaintiff's back, hip, and leg pain. He credited Plaintiff's allegations of pain and instability in his lower extremity when limiting him to a restricted range of sedentary work. "An RFC for less than a full range of sedentary work reflects very serious limitations resulting from an individual's medical impairment(s) and is expected to be relatively rare." SSR 96-9p, *available at* 1996 WL 374185, at *1, *3 (full range of sedentary work involves: lifting no more than 10 pounds at a time; occasionally lifting/carrying articles like docket files, ledgers, and small tools; walking/standing for generally no more than about two hours; and sitting for about six hours).

In making this determination, the ALJ properly considered the objective evidence showing advanced osteoarthritis of the hips, as well as Plaintiff's statements to medical providers and testimony at the hearing that he experienced pain and instability due to his physical impairments. Plaintiff's complaints were primarily with regard to standing and walking for long periods. The ALJ's RFC credited these allegations in limiting him to a restricted range of sedentary work.

The ALJ also discussed the opinion evidence. On June 15, 2023, state agency physician Judee Bland, M.D., completed a Physical Residual Functional Capacity Assessment, in which she found Plaintiff had the physical RFC to perform a reduced range of light work. (Tr. 75-77.) On September 6, 2023, James Weiss, M.D. completed a Physical Residual Functional Capacity Assessment on reconsideration, and found Plaintiff was capable of sedentary work, with postural and environmental limitations. (Tr. 90-92.) Dr. Weiss found Plaintiff could never climb ladders, ropes, or scaffolds; could never stoop; could occasionally climb ramps or stairs, balance, kneel, crouch, and crawl; should avoid all exposure to hazards; and avoid concentrated exposure to extreme temperatures and vibration. (Tr. 91.)

"The new regulations require the ALJ to consider the opinions of state agency medical consultants because they are highly qualified experts in Social Security disability evaluation." *Collins v. Kijakazi*, 2021 WL 3909670, at *4 (W.D. Mo. Aug. 31, 2021). *See also* 20 C.F.R. § 404.1513a(b)(1).

The ALJ found Dr. Bland's June 2023 opinion "not persuasive." (Tr. 23.) He found Dr. Weiss's subsequent opinion "persuasive," given the treatment records that support greater limitations. *Id.* The ALJ stated that Plaintiff's ongoing back, hip, and leg pain appears to be caused by his Wernicke-Korsakoff Syndrome and osteoarthritis of the hips. *Id.* He concluded

that Plaintiff's symptoms "clearly limit him to sedentary work." *Id.* Finally, the ALJ noted that Plaintiff's cane use was not necessary for the RFC, as the record fails to show that it was medically necessary. *Id.*

After carefully reviewing the ALJ's evaluation of Plaintiff's subjective complaints, the Court concludes that substantial evidence supports his decision. *See Goff*, 421 F.3d at 789 ("If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision.") (citation omitted).

The ALJ reiterated that he "recognizes the extent of [Plaintiff's] limitations that arose in late 2022," and that he "has ongoing lower extremity weakness and pain." (Tr. 22.) He concluded that, "[o]verall, the signs and symptoms throughout the record are consistent with his reduced sedentary residual functional capacity." *Id.*

The ALJ's physical RFC determination is supported by substantial evidence in the record as a whole. Notably, it is *more restrictive* than that of the initial state agency physician opinion and consistent with the second opinion. The ALJ conducted a thorough review of complex medical problems that arose suddenly. Much of the relevant medical evidence was created after Plaintiff filed his applications for benefits, as he was still recovering from his hospitalization. The ALJ based his findings on medical imaging, findings on examination, and Plaintiff's subjective complaints of pain, while considering the unique facts of this case.

Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.

/s/ *Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 30th day of September, 2026.